UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JAMES P. REGAN<br>952 Towlston Road<br>McLean, Virginia 22102, | ) ) ) ) | |
|         Plaintiff | ) ) | |
| vs. | ) ) | C.A. No. _____ |
| LEX, INC.<br>900 7th Street, N.W., Suite FL 100<br>Washington, D.C. 20001 | ) ) ) ) | |
|   Serve:<br>Corporation Service Company<br>1090 Vermont Avenue, N.W.<br>Washington, D.C. 20005 | ) ) ) ) ) | |
|         Defendant. | ) ) ) | |

## COMPLAINT

Plaintiff James P. Regan ("Mr. Regan"), by counsel, hereby complains and alleges as follows:

## I. NATURE OF CASE

1. This is an action brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 et seq., by James P. Regan against Defendant Lex, Inc. ("Lex") for not paying Plaintiff overtime compensation for all hours over 40 per week that he was required or "suffered or permitted" to work for Defendant. Under the supplemental jurisdiction of this Court, and also based on diversity jurisdiction, Plaintiff brings additional claims for unpaid compensation. Under diversity jurisdiction and/or under the supplemental jurisdiction of this Court, Plaintiff also seeks a declaratory judgment that the purported covenant not to compete in an Employment Agreement with Defendant Lex, Inc. is either

unenforceable or invalid or does not prohibit him from working for Pro-Legal Services, Inc.

## II. JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction over the Fair Labor Standards Act claims under 28 U.S.C. §1331 and 28 U.S.C. §1337. There is supplemental jurisdiction for the state law claims under 28 U.S.C. §1367 because the federal FLSA claims and state law claims arise from a common nucleus of operative facts concerning the employment relationship between Plaintiff and Defendant.    In addition, there is independent diversity jurisdiction for the state law claims, under 28 U.S.C. §1332, because there is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000.

3.    Venue is proper in this district by virtue of 28 U.S.C. §1391(b) because, among other reasons, a substantial part of the events or omissions giving rise to the claims occurred in this district.

## III. THE PARTIES

4.    Plaintiff James P. Regan ("Mr. Regan") is a resident of Fairfax County, Virginia and a citizen of Virginia.  Mr. Regan was formerly employed by Defendant Lex, Inc., working in the District of Columbia, from on or about July 28, 2002 through on or about July 2, 2007.

5.    Defendant Lex, Inc. ("Lex") is a corporation organized under the laws of Delaware, with its principal place of business in the District of Columbia.    Defendant has regularly conducted

business activity in the District of Columbia at all times relevant herein.  Defendant performs copy services.

IV.  <u>FACTS</u>

6.    Mr. Regan was employed by Lex from on or about July 28, 2002 through on or about July 2, 2007.

7.    Lex had annual gross volume of sales or business done of $500,000 or more at all times relevant herein.

8.    Lex was an enterprise engaged in interstate commerce or in the production of goods for interstate commerce at all times relevant herein.

9.    Lex engaged in interstate commerce by such means as regularly sending mail to persons in other states, making telephone calls to persons in other states, and receiving payments from persons in other states.

10.   Mr. Regan engaged in commerce across state lines in the course of his employment with Defendant.

11.   Mr. Regan regularly worked more than 40 hours a week for Defendant.

12.   Defendant never paid Mr. Regan one-and-one-half times his regular rate of pay for overtime hours worked.

13.   Defendant did not pay Mr. Regan for all hours that he worked with the actual or constructive knowledge of Defendant.

14.   Defendant expressly and/or impliedly agreed upon contract(s) of employment with Mr. Regan whereby in return for Mr. Regan providing labor to Defendant, Defendant would compensate Mr. Regan at an agreed upon rate and/or by agreed upon commissions.

3

15.  Mr. Regan performed under the contract(s) of employment by providing his labor to Defendant.

16.  Defendant Lex failed to compensate Mr. Regan as agreed by, without limitation, failing to pay Mr. Regan all commissions that were due him.

17.  While employed by Defendant Lex, Mr. Regan regularly spent more than 50 percent of his working time in the District of Columbia in all workweeks relevant herein.

18.  Defendant Lex has admitted that there are irregularities in how it calculated Mr. Regan's commissions, but has failed to pay Mr. Regan commissions that are due him.

19.  On or about August 2, 2002, Mr. Regan signed a form Employment Agreement, prepared by his employer.  The Employment Agreement is attached as Exhibit 2.

20.  The Employment Agreement contains, in paragraph 10, a Covenant Not to Compete, which purports to restrict Mr. Regan's ability to accept other employment.

21.  On or about July 2, 2007, Lex terminated Mr. Regan's employment after Mr. Regan refused to sign a new employment agreement, which contained a much broader, and likely unlawful, covenant not to compete.

22.  Since his termination by Lex, Mr. Regan has been offered employment by Pro-Legal Services, Inc., at compensation of well over $75,000 a year.

23.  Defendant Lex has indicated, through agents, that it would consider Mr. Regan working for Pro-Legal Services, Inc. to

4

constitute a violation of the Covenant Not to Compete and would bring suit against Mr. Regan if he worked for Pro-Legal Services, Inc. and/or has threatened to bring such a lawsuit.

24.   In view of the threats by Defendant Lex to bring suit against Mr. Regan for alleged violation of the Covenant Not to Compete if he were to accept employment by Pro-Legal Services, Inc. and work for that company, Mr. Regan has not accepted that employment or worked for that company.

25.   Pro-Legal Services, Inc. is a provider of litigation support and document management solutions to law firms and businesses, including electronic data discovery, online housing, document imaging, and coding.

26.   Lex, Inc. is primarily a provider of copy services.

27.   The Employment Agreement between Lex, Inc. and Mr. Regan, signed in 2002, states that "Employee's primary duty shall be to assist the Company in becoming the best, most successful copy services provider in the Employee's Assigned Territory."

## V. CLAIMS FOR RELIEF

### COUNT ONE
### VIOLATION OF FAIR LABOR STANDARDS ACT

28.   The allegations of the preceding paragraphs are here realleged.

29.   Defendant did not compensate Mr. Regan for all hours that Defendant required and/or "suffered or permitted" Mr. Regan to work for Defendant.

5

30. Defendant regularly and willfully required Mr. Regan to work in excess of 40 hours during a workweek and/or "suffered or permitted" such overtime work.

31. Mr. Regan, on numerous occasions, worked in excess of 40 hours during a week for Defendant.

32. Defendant did not pay Mr. Regan overtime compensation (i.e., one and one-half times her regular rate of pay) for all of the hours he worked in excess of 40 in each workweek (i.e., overtime hours worked).

33. Defendant regularly and willfully violated the FLSA by not compensating Mr. Regan for all hours he was required and/or "suffered or permitted" to work for Defendant and/or for not paying all overtime compensation due to Mr. Regan.

34. By reason of the foregoing, Mr. Regan has been damaged and is due unpaid compensation (including unpaid overtime compensation), an amount equal to that unpaid compensation as liquidated damages, and reasonable attorneys' fees and expenses, and costs under 29 U.S.C. §216(b).

WHEREFORE, Mr. Regan demands judgment against Defendant Lex, Inc., for unpaid compensation (including unpaid overtime compensation) in an amount to be determined at trial, an amount equal to that unpaid compensation as liquidated damages, interest, reasonable attorneys' fees and expenses, costs, and such other relief as this Court considers proper.

COUNT TWO
VIOLATION OF DISTRICT OF COLUMBIA WAGE HOUR STATUTE

35.  The allegations of the preceding paragraphs are here realleged.

36.  Defendant did not compensate Mr. Regan for all hours that Defendant required and/or "suffered or permitted" Mr. Regan to work for Defendant in the District of Columbia.

37.  Defendant regularly and willfully required Mr. Regan to work in excess of 40 hours during a workweek and/or "suffered or permitted" such overtime work, in the District of Columbia.

38.  Mr. Regan, on numerous occasions, worked in excess of 40 hours during a week for Defendant, in the District of Columbia.

39.  Defendant did not pay Mr. Regan overtime compensation (i.e., one and one-half times his regular rate of pay) for all of the hours he worked in excess of 40 in each workweek (i.e., overtime hours worked).

40.  Defendant regularly and willfully violated the District of Columbia wage hour statute, D.C. Code §32-1001 et seq, by not compensating Mr. Regan for all hours he was required and/or "suffered or permitted" to work for Defendant and/or for not paying all overtime compensation due to Mr. Regan, for work in the District of Columbia.

41.  By reason of the foregoing, Mr. Regan has been damaged and is due unpaid compensation (including unpaid overtime compensation), an amount equal to that unpaid compensation as liquidated damages, and reasonable attorneys' fees and expenses, and costs under D.C. Code §32-1012.

7

WHEREFORE, Mr. Regan demands judgment against Defendant Lex, Inc., for unpaid compensation (including unpaid overtime compensation) in an amount to be determined at trial, but estimated to be over $75,000, an amount equal to that unpaid compensation as liquidated damages, interest, reasonable attorneys' fees and expenses, costs, and such other relief as this Court considers proper.

COUNT THREE
BREACH OF CONTRACT

42.   The allegations of the preceding paragraphs are here realleged.

43.   Mr. Regan and Defendant Lex expressly or impliedly entered into a contract whereby, in return for Mr. Regan providing his labor to Lex, Lex would pay Mr. Regan agreed-upon compensation, including commissions.

44.   Defendant Lex breached an express or implied contract with Mr. Regan by not paying Mr. Regan all agreed-upon compensation, including commissions.

45.   Mr. Regan, through counsel, has repeatedly demanded the unpaid compensation, including the unpaid commissions.

46.   Lex has admitted that there are irregularities in how it calculated Mr. Regan's commissions.

47.   Lex has refused to pay Mr. Regan commissions to which he was entitled.

WHEREFORE, Mr. Regan demands judgment against Defendant Lex, Inc. for all unpaid wages, including unpaid commissions, in an amount to be determined at trial, but estimated to total $180,000,

interest, costs, and such other relief as this Court considers proper.

COUNT FOUR
VIOLATION OF DISTRICT OF COLUMBIA WAGE PAYMENT STATUTE

48. The allegations of the preceding paragraphs are here realleged.

49. The failure of Defendant Lex to pay Mr. Regan all wages, including commissions due him under contract and/or under statute constitutes violations of D.C. Code §32-1301 et seq. and Mr. Regan is covered under that statute.

50. As a result of the violations, Mr. Regan has been damaged.

WHEREFORE, Mr. Regan demands judgment against Defendant Lex, Inc. for unpaid wages, including commissions, in an amount to be determined at trial, but estimated to total $180,000, an amount equal to the unpaid wages as liquidated damages, interest, reasonable attorneys' fees and expenses, costs, and such other relief as this Court considers proper.

COUNT FIVE
VIOLATION OF MARYLAND WAGE PAYMENT STATUTE

51. The allegations of the preceding paragraphs are here realleged.

52. The Employment Agreement between Defendant Lex and Mr. Regan contained a provision stating that "the law of the State of Maryland will govern the interpretation, validity, and effect of this Agreement."

9

53. The failure of Defendant Lex to pay Mr. Regan all wages, including commissions due him under contract and/or under statute constitutes violations of Maryland Code, Labor and Employment, §3-501 et seq., in view of the Maryland law clause in the Employment Agreement.

54. There is no bona fide dispute concerning payment of the wages in question.

55. As a result of the violations, Mr. Regan has been damaged.

WHEREFORE, Mr. Regan demands judgment against Defendant Lex, Inc. for unpaid wages, including commissions, in an amount to be determined at trial, but estimated to total $180,000, an amount not exceeding three times the wage under §3-507.1, interest, reasonable attorneys' fees and expenses, costs, and such other relief as this Court considers proper.

COUNT SIX
DECLARATORY JUDGMENT CONCERNING COVENANT NOT TO COMPETE

56. The allegations of the preceding paragraphs are here realleged.

57. If the Covenant Not to Compete in the 2002 Employment Agreement is valid and enforceable, it could prohibit Mr. Regan from employment with Pro-Legal Services, Inc., which has offered him employment.

58. Mr. Regan cannot work for Pro-Legal Services, Inc. because of the threat of litigation against him by Defendant Lex to enforce the Covenant Not to Compete if he accepts such employment and/or works for Pro-Legal Services, Inc.

10

59.  Mr. Regan seeks a declaratory judgment under 28 U.S.C. §2201 against Defendant Lex either that the Covenant Not to Compete is unenforceable and/or invalid or that the Covenant Not to Compete does not prohibit Mr. Regan from employment with Pro-Legal Services, Inc.

60.  Defendant Lex has breached the 2002 Employment Agreement by not paying Mr. Regan compensation, including commissions, called for by the Employment Agreement and its Exhibit A, as modified by the parties.

61.  Because Defendant Lex has breached the Employment Agreement, Defendant cannot enforce its Covenant Not to Compete against Mr. Regan.

62.  The Covenant Not to Compete in the 2002 Employment Agreement is overly broad and therefore unenforceable.

63.  The Covenant Not to Compete is impermissibly vague and therefore unenforceable.

64.  For example, it states that "Employee shall not, either directly or indirectly, on Employee's own behalf or in the service of or on behalf of others, (i) engage in any competing business activity within the Employee's assigned territory."  However, the document does not define the terms "directly or indirectly" or the term "competing business activity."

65.  The definition of "assigned territory" is overly broad and covers the entire Washington, D.C. Metropolitan Area, a very broad geographic area stretching from Howard and Charles Counties

11

in Maryland to Loudon and Prince William Counties in Virginia and which makes the provision overly broad and unenforceable.

66.  Mr. Regan neither solicited business nor performed services in much of this region while employed by Lex.

67.  While employed by Lex, Mr. Regan was prohibited by Lex from soliciting business in Virginia and Maryland.

68.  While employed by Lex, Mr. Regan was prohibited by Lex from soliciting business from all but certain designated firms in the District of Columbia.

69.  The Covenant Not to Compete in the 2002 Employment Agreement contained a purported liquidated damages provision that would require Mr. Regan to pay Lex far more than any actual damages caused by any breach of the Covenant Not to Compete.

70.  The purported liquidated damages provision is an illegal penalty provision.

71.  The Covenant Not to Compete purports to run for two years "after the termination of employment, whether with or without cause, whether voluntary or involuntarily . . . ."

72.  If valid, the Covenant Not to Compete would run until on or about July 1, 2009.

73.  This period is excessive, under the facts related to this case.

74.  If the Covenant Not to Compete prohibits Mr. Regan from employment with Pro-Legal Services, Inc. until on or about July 1, 2009 and/or Mr. Regan cannot work for Pro-Legal Services, Inc. until on or about July 1, 2009 because of the threat of litigation

12

to enforce the Covenant Not to Compete by Defendant Lex, Mr. Regan would lose far more than $75,000 in compensation during this period.

WHEREFORE, Mr. Regan seeks a declaration of the respective rights of the parties and seeks entry of judgment declaring either that the Covenant Not to Compete is unenforceable and/or invalid or that the Covenant Not to Compete does not prohibit Mr. Regan from employment with Pro-Legal Services, Inc.

<u>JURY DEMAND</u>

Plaintiff demands a trial by jury on all issues triable by a jury.

Respectfully submitted,

JAMES P. REGAN
By counsel:

John J. Rigby
D.C. Bar #255539
McInroy & Rigby, L.L.P.
2200 Wilson Blvd., Suite 800
Arlington, Virginia 22201
(703) 841-1100
(703) 841-1161 (fax)
jrigby@mcinroyrigby.com

13

CONSENT FOR SUIT UNDER THE FAIR LABOR STANDARDS ACT

I hereby authorize John J. Rigby of the law firm of McInroy & Rigby, L.L.P., 2200 Wilson Blvd., Suite 800, Arlington, Virginia 22201 to bring suit against Lex, Inc. and/or any other appropriate parties under the Fair Labor Standards Act, 29 U.S.C. §201 et seq., and any appropriate state law(s), including, without limitation, the District of Columbia Minimum Wage Act, also known as the District of Columbia wage-hour statute, D.C. Code §32-1001, et seq., to recover unpaid minimum wages, overtime, and other compensation, as well as liquidated damages, interest, costs, and reasonable attorneys' fees. I ask that reasonable attorneys' fees and costs be awarded to John J. Rigby, and any other attorneys who assist in this litigation. I give my attorneys the right to compromise and settle any claim. I authorize the filing of a collective action.

signature: _____

name: James P. Regan

address:    952 Towlston Road
            McLean, Virginia 22102

date: April 20 2008



# EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT (this "Agreement"), made as of August 1, 2002, by and between Lex, Inc., a Delaware corporation with its principal office at 1225 New York Avenue, N.W., Washington, D.C. 20005 (the "Company") and James Regan, an individual residing at ___952 Toulston Road , McLean Va 22102_____ (the "Employee").

1.    Definitions.

      a.    Customer or account, as used herein, shall mean the business entity with whom the Company transacts business.

      b.    Customer contact or account contact, as used herein, shall mean the individual representative, employee, partner, principle, or agent of a customer or account with whom Employee interacts in transacting business or soliciting business.

      c.    Contact or communication, as used herein, shall mean intercourse of any kind between the Employee and another individual(s), whether, verbal, written, or otherwise, for the purpose of providing copy services or the solicitation of copy services.

      d.    Assigned Territory, as used herein, shall mean the Washington, DC Metropolitan Area, including the District of Columbia and Arlington, Fairfax, Loudon and Prince William Counties and the City of Alexandria, Virginia and Montgomery, Prince Georges, Howard and Charles Counties, Maryland.

2.    Employment. The Company employs the Employee and the Employee accepts employment upon the terms and conditions of this Agreement. If the Employee is promoted, demoted, transferred, or re-assigned to another position, this Agreement survives that employment action.

3.    Term. Employee's employment shall be terminable at the will of each party. Employee shall provide fourteen (14) days advance written notice to the Company when employee desires to terminate the employment relationship. Employee shall be entitled to compensation only for such time as Employee provides full-time and exclusive services to the Company, as described herein. If Employee elects to terminate employment, the Company, at its option, may immediately terminate Employee's employment without allowing for the additional fourteen (14) days to elapse.

-1-



4.    Compensation.  In consideration of the services to be rendered by the
Employee under this Agreement, the Company shall pay the Employee the amount set
forth in Exhibit A attached hereto and made a part hereof, which includes any and all
benefits the Company may elect to offer.  Such compensation shall be subject to
withholding and other applicable taxes.  Employee's compensation or any aspect of the
compensation may be increased or decreased by the Company, at the sole discretion of the
Company.

5.    Duties.  The Company shall employ the Employee as an Account Manager.
Employee shall comply with the obligations set forth in this Agreement and with
Company policy, whether or not reduced to writing, to the extent Company policy is not
inconsistent with the terms of this Agreement.  Employee's primary duty shall be to assist
the Company in becoming the best, most successful copy services provider in the
Employee's Assigned Territory.  Employee's duties therefore, include all tasks,
assignments, and activities in furtherance of the primary duty.  Employee will be
responsible for, among other things, picking up and delivering customer jobs; writing job
orders; assisting customers with job specifications; resolving customer disputes;
promoting service with all customers; assisting all Company employees in providing the
highest level of customer service; providing new customer leads; soliciting new business
with existing customers; soliciting business from new customers; and all other duties
required by the Company.   It is expressly understood that Employee's communications
with any customer contact, including partners, principles, employees, agents, and
representatives of any account have as their ultimate purpose or goal the solicitation
and/or servicing of all of the copy service business of that account for the Company in
furtherance of Employee's duties hereunder.

6.    Duty of Loyalty.  The Employee shall devote his entire time, energy and
attention to the Employer's business.  During the term of employment, Employee agrees
not to engage in any other business activity, regardless of whether it is pursued for gain or
profit, unless such activity is specifically authorized by the Company, in writing.
Employee further agrees not to pursue or be connected with any business which is in
competition with the Company or its affiliates or subsidiaries during the term of
employment.

7.    Sales Subject to Acceptance.  All sales made by Employee shall be made
subject to acceptance by the Company, and all contracts for the Company's services shall
be executed by a duly authorized officer of the Company.   No credit or other financial
decisions relating to the Company's sales or business shall be made by Employee.

8.    Probationary Period.  All new employees are hired on a ninety (90) day

-2-

probationary basis. The Company may, however, extend the probationary period up to an additional ninety (90) days, at the Company's sole discretion. Employee will be informed if the probationary period is to extend beyond the first ninety (90) days. In addition, the probationary period will be extended by the number of days Employee is absent from scheduled work while in a probationary status. Employee may choose to resign, or may be terminated by the Company, without notice at any time during the probationary period. Upon termination, a probationary employee will be paid the pay earned to the date of termination. An employee who successfully completes the probationary period is entitled to the benefits of a regular (non-probationary) employee. However, employment is terminable by either the Company or Employee at any time, at will, both before and after the probationary period. Employee will not be paid for absences that occur during the probationary period or the extended probationary period.

9.    Representations and Warranties. Employee represents and warrants that he or she is not a party to any agreement containing a non-competition provision or other restriction that would preclude any part or all of Employee's employment with the Company or any of the services which Employee will provide to the Company. Moreover, Employee represents and warrants that he or she is not limited by any court order or other obligation from performing all assigned duties for the Company. Employee understands that this is a condition precedent to any employment offered by the Company and that Employee agrees herein that he or she will indemnify and hold harmless the Company for any legal action taken against the Company as the result of any agreement with a prior employer, including reimbursing the Company for any legal expenses incurred in defending such action.

10.    Covenant Not to Compete.

a.    The Company undertakes to train and to continue to train Employee and to impart to Employee confidential information and knowledge about the Company's business strategies and policies, accounts, customer lists, trade secrets, procedures, and methods. The Company has established a valuable and extensive business in its service, which business has been developed at a considerable expense to the Company. The nature of the business is such that relationships and the goodwill that the Company has developed must be maintained through the close personal contact of its Employees with the contact person(s) at the particular account or customer.

b.    By virtue of Employee's employment with the Company, Employee will become familiar with and have access to the manner, methods, trade secrets, and confidential information pertaining to the Company's business, and with the names and lists of customers and customer contacts. During Employee's employment with the

Company, Employee is being compensated in part for developing and maintaining relationships and good will with customers, prospective customers, customer contacts, and prospective customer contacts of the Company. It is understood that Employee will become personally acquainted with the Company's customers, their business requirements, the amount paid by them for the Company's services, and the contact persons at the particular account or customer.

     c.    For a period of two (2) years after the termination of employment, whether with or without cause, whether voluntary or involuntary, the Employee shall not, either directly or indirectly, on Employee's own behalf or in the service of or on behalf of others, (i) engage in any competing business activity within the Employee's assigned territory; or (ii) contact, cause to be contacted, or communicate with any specific accounts or customers for which Employee was responsible or with whom Employee had contact during his or her employment with the Company. Such contact is prohibited only to the extent that it is adverse to the interests of the Company or would benefit or potentially benefit any competitor or potential competitor of the Company, and further, nothing contained herein shall prevent Employee from engaging in any activity that is not competitive with the business then being conducted by the Company. Employee understands and agrees that the Company has a legally protectable interest in the relationships and good will it has developed with its customers through Employee and other employees, in the relationships and good will it has developed with individual contact persons at each of its customers, in its customers themselves and its business with them, including that business which the Employee developed or for which the Employee had responsibility.

     d.    In the event of a breach of any provision of Section 10 by Employee, Employee agrees that the Company shall be entitled to an injunction prohibiting conduct in breach of this Agreement. Employee acknowledges and agrees that a breach of Section 10 will result in immediate, actual, irreparable injury to the Company. Employee further acknowledges and agrees that it is impossible to determine with any reasonable accuracy the financial injury that could and/or would result by actions in breach of Section 10.

     e.    It is understood and agreed that part of the consideration for Employee's employment and/or continued employment with the Company is this Agreement not to compete. It is also understood and agreed that one goal of the period of non-competition is to allow the Company to re-establish the personal relationships with customers and customer contacts developed and/or nurtured by Employee during his or her employment with the Company. In the event of a breach of Section 10 by the Employee, the Company shall be entitled to liquidated damages as defined herein. For each customer or account of the Company that Employee contacts, causes to be contacted,

or otherwise works with or for in violation of this Section 10, Employee shall pay to the Company liquidated damages in the amount of the average monthly billing by the Company to that customer or account times the number of months remaining in Employee's Covenant Not to Compete, to be determined from the date of the initial contact made by the Employee to that customer or account. The average monthly billing shall be the average billing to that customer or account by the Company's office where Employee worked during the twelve (12) months preceding Employee's termination. The parties agree that it is impossible to ascertain with any reasonable accuracy the amount of prospective damages to the Company resulting from a breach by the Employee of this Section 10, which damages would include business lost to the Company for a period of time well beyond the two year term specified in this Section 10. The parties further agree that the damages set forth above are reasonable, and not a penalty, based upon a conservative estimate of the value, or a portion of the value, of the loss of the customer or account in question, in addition to a loss of good will.

11.    <u>Non-Solicitation of Employees.</u>

a.    For a period of two (2) years after the termination of employment, whether with or without cause, whether voluntary or involuntary, the Employee shall not, either directly or indirectly, on Employee's own behalf or in the service of or on behalf of others, solicit, divert, recruit, or employ any employee of the Company, including any of its subsidiaries or affiliates.

b.    In the event of a breach of this Section 11 by the Employee, the Company shall be entitled to liquidated damages as defined herein. For each former employee of the Company solicited, diverted, recruited, or employed or caused to be in violation of this Section 11, Employee shall pay the Company liquidated damages for each account or customer of the Company which such former employee handled for the Company during the two (2) years immediately preceding termination of that former employee and which customer or account the former employee contacts or otherwise services or works with for the benefit of Employee or anyone in privity with Employee. The liquidated damages for each such account or customer shall be (i) the amount of billings by the Company to the customer or account during the twelve (12) months immediately preceding termination of such former employee with the Company, and (ii) the amount of the first six (6) months' salary paid to the replacement(s) for the former employee. If the former employee was not in a position to have accounts, Employee shall pay the Company the amount of the first six (6) months' salary paid to the replacement(s) for the former employee.

c.    The parties agree that it is impossible to ascertain with any

-5-

reasonable accuracy the amount of prospective damages to the Company resulting from a breach by the Employee of this Section 11. The loss of an employee creates a hardship and burden on the Company, for which the Company suffers substantial, irreparable harm. The Company must expend funds to search for a replacement employee and train that employee. Further, the loss of the overall efficiency of the office as the result of an employee leaving cannot be quantified. Consequently, the parties agree that the liquidated damages set forth above are reasonable, and not a penalty, based upon a conservative estimate of the value, or a portion of the value, of the former employee to the Company.

        d.     In the event of a breach of any provision of Section 11 by Employee, Employee agrees that the Company shall be entitled to an injunction prohibiting conduct in breach of this Agreement. Employee acknowledges and agrees that a breach of Section 11 will result in immediate, actual, irreparable injury to the Company. Employee further acknowledges and agrees that it is impossible to determine with any reasonable accuracy the financial injury that could and/or would result by actions in breach of Section 11.

        12.    <u>Non-Disclosure of Confidential Information</u>.

        a.     The Company is committed to preserving and protecting confidential and proprietary information and trade secrets (collectively "Confidential Information") to the full extent permitted by law. During the term of employment, Employee will have access to and become familiar with such Confidential Information of the Company. All confidential information is the exclusive property of the Company. Confidential Information includes, but is not limited to, devices, secret inventions, processes and compilations of information, records, specifications, customer lists, price lists, customer proposals, advertising and marketing plans, business plans, all computer information designed by or developed for the Company, or any confidential knowledge or secrets with respect to the business of the Company.

        b.     In consideration of employment, Employee acknowledges an obligation not to disclose Confidential Information to any third party, directly or indirectly, or use Confidential Information in any way that is adverse to the Company, either during or for a period of five (5) years after the term of employment. Use of Confidential Information during the term of employment is restricted to that use necessary for the performance of Employee's duties.

        c.     Upon termination of employment, Employee shall return to the Company all Confidential Information, including, but not limited to, data, records, customer and product lists, notes, correspondence, or any other documents or copies

thereof, which came into Employee's possession and are related to the Company's business.

13.    Injunctive Relief.  To the extent permissible by law, the Company shall be entitled to injunctive or other equitable relief in the event of a breach or threatened breach by Employee of any of the covenants contained in this Agreement.

14.    Waiver of Breach.  The failure of the Company to insist upon the performance of any of the terms and conditions of this Agreement, or the waiver of any breach of any of the terms and conditions of this Agreement, shall not be construed as thereafter waiving any such terms and conditions, but the same shall continue and remain in full force and effect as if no such forbearance or waiver had occurred.

15.    No Assignment.  This Agreement and the rights, interests and benefits hereunder shall not be assigned, transferred, pledged, or hypothecated in any way by Employee or any executor, administrator, heir, legatee, distributee, or other person claiming under Employee and shall not be subject to execution, attachment, or similar process.  Any attempt by Employee to assign, transfer, pledge, or hypothecate or otherwise dispose of this Agreement or such rights, interest and benefits, or the levy of any attachment or similar process thereupon shall be null and void and shall relieve the Company of any and all liability hereunder.

16.    Attorney's Fees.  If the Employee makes a claim against the Company in any way associated with his employment at the Company, and the Company prevails in whole or in part on that claim, or if the Company succeeds in whole or in part in a claim against Employee for breach of this Agreement, the Company is entitled to recover from Employee attorneys' fees and other litigation costs, including costs associated with retaining the services of expert witnesses.

17.    Severability and Reformation.  If any provision of this Agreement is held invalid by a court of competent jurisdiction, such holding will not invalidate any of the other provisions herein, as it is intended that the provisions of this Agreement shall be severable and that the invalidity of one shall not invalidate the others.  Notwithstanding the foregoing, if it should ever be held that any provision contained herein does not contain reasonable limitations as to time, geographical area, or scope of activity to be restrained, then the court so holding shall, at the request of the Company, reform such provisions to the extent necessary to cause them to contain reasonable limitations as to time, geographical area and scope of activity to be restrained and to give maximum permissible effect to the intentions of the parties as set forth herein, and the court shall enforce such provisions as reformed.

-7-

18.    <u>Governing Law</u>. It is agreed by the parties that the law of the State of Maryland will govern the interpretation, validity, and effect of this Agreement.

19.    <u>Counterparts</u>. This Agreement may be executed in multiple counterparts, and by the parties by separate counterpart, each of which shall be deemed an original and all of which together shall constitute one instrument.

20.    <u>Entire Agreement</u>. This Agreement supersedes any prior Agreements between the Employee and the Company, as well as any other statements or representations of any kind. Employee and the Company hereby agree that this Agreement constitutes the entire agreement between the parties with respect to Employee's employment with the Company. No changes or amendments to this Agreement shall be effective unless in writing and signed by both parties. This Agreement shall bind the parties, their successors and assigns.

21.    <u>Forum</u>. The parties agree that any action to enforce this Agreement shall be brought in the United States District Court for the District of Columbia. If, and only if, that court does not have subject matter jurisdiction, then an action to enforce this Agreement may be brought in any court in the District of Columbia of competent jurisdiction.

IN WITNESS WHEREOF, the parties have affixed their signatures to this Agreement to be effective on the day and year first written above.

LEX, INC.                                 EMPLOYEE

By: _____              _____

Name: _CHUCK PINDELL_____               Name: _JAMES P. REGAN_____

Date: _8·1·02_____              Date: _8/02/02_____

-9-

EXHIBIT "A"

LEX Reprographics is pleased to offer you the position of Account Manager. This is a full-time position with a starting salary of $30,000 per annum plus a bonus of 2% of Scott Butlers Revenue above $150,000 and less than $200,000. The salary will be paid twice per month and any bonus will be paid once per month. All compensation will be paid according to LEX Reprographics' current pay schedule.

LEX, INC.                                        EMPLOYEE

By: _____                      _____

Name: _Chuck Pindell_                             Name: _James P. Regan_

Date: _8·01·02_                                    Date: _8/02/02_

-10-

## CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| James P. Regan, 952 Towlston Road, McLean, VA 22102 | Lex, Inc., 900 7th Street, NW, Suite FL 100, Washington, D.C. 20001 |

88888

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**
(EXCEPT IN U.S. PLAINTIFF CASES)

88888

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

John J. Rigby; McInroy & Rigby, LLP
2200 Wilson Blvd., #800
Arlington, VA 22201
703.841.1100

ATTORNEYS

Case: 1:08-cv-00697
Assigned To : Lamberth, Royce C.
Assign. Date : 4/23/2008
Description: Labor-ERISA

JURY ACTION

### II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

⊙ 3 Federal Question (U.S. Government Not a Party)

○ 2 U.S. Government Defendant

○ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

**○ A. Antitrust**

☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

**Any nature of suit from any category may be selected for this category of case assignment.**

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)        OR        ○ F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ⊚ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☒ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
⊚ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Fair Labor Standards Act; claim for unpaid overtime compensation and related state law claims. 29 U.S.C. 201

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23  DEMAND $ _____  Check YES only if demanded in complaint  JURY DEMAND: YES ☒ NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE 4/22/2008   SIGNATURE OF ATTORNEY OF RECORD  *John J. Rioj*

23

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.